**Opinion filed July 10, 2026**



## In The

# 𝕰𝖑𝖊𝖛𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

_____

## No. 11-26-00012-CV

_____

## IN THE INTEREST OF G.H., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 11531-CX**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from the trial court's order terminating the parental rights of the mother and father of G.H.[1]  Both parents appealed.  On appeal, each parent challenges the sufficiency of the evidence to support the trial court's findings that termination of that parent's parental rights is in the child's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2025).  We affirm the trial court's order.

---

[1]To protect the identities of the child and the child's family members, we use pseudonyms or initials to refer to them.  *See* TEX. R. APP. P. 9.8(b).

## I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. *Id.* To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1), and that termination is in the best interest of the child. *Id.* Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that each parent: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child; and (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child. *See id.* § 161.001(b)(1)(D), (E). The trial court further found that termination of each parent's parental rights is in the child's best interest. *See id.* § 161.001(b)(2).

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (first quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); and then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)).

As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of the child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re J.S.*, 687 S.W.3d 541, 547 (Tex. App.—Eastland 2024, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one

factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the child, not the parent. *J.S.*, 687 S.W.3d at 548; *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his or her past conduct in determining whether termination of a parent's parental rights is in the child's best interest. *J.S.*, 687 S.W.3d at 548; *In re Z.R.M.*, 665 S.W.3d 825, 829 (Tex. App.—San Antonio 2023, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the child may recur in the future if the child is returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Moreover, the factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness by the parent to meet the child's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

## II. *The Evidence Presented at Trial*

The Department received a report in February 2024 that the mother and father were using drugs and possibly engaging in domestic violence while caring for G.H. The mother admitted to Department investigator Alyssa Jones that she and the father were marihuana users, and that she used marihuana while pregnant with G.H. The mother had a history of methamphetamine use but purportedly stopped using in 2020 or 2021. The mother's criminal history included three felony convictions for possession of methamphetamine for offenses that she committed in 2014, 2016, and 2019.[2] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (West Supp. 2025). Before G.H. was born, the Department investigated the mother in 2014 and 2019 for her drug use and neglectful supervision of her two older children, and her second son was ultimately adopted by another family.

When Jones spoke to the father, he claimed to have "switched [from marihuana] to . . . CBD product[s]" approximately a month prior "and [did] not really use [illegal] mari[h]uana" anymore. In June 2023, the father was arrested for possessing less than a gram of tetrahydrocannabinol (THC) and a vape pen was found in the vehicle he was driving; the father was still under indictment for this charge in February 2024. *See* HEALTH & SAFETY §§ 481.103, 481.116(b). He pled guilty to this offense in November 2024 and was placed on community supervision for five years. The father's prior criminal conduct included violence and drug use— he committed aggravated assault with a deadly weapon, a second-degree felony, in September 2014. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2026). In November 2016, while on community supervision for the aggravated-assault offense, he committed the state-jail felony offense of possession of methamphetamine, pled guilty, and was sentenced to confinement for eighteen

---

[2]The mother was originally placed on deferred adjudication community supervision for her 2014 methamphetamine-possession offense. After she was indicted for possession of methamphetamine in 2016, she was adjudicated guilty for the 2014 offense and convicted of the 2016 offense on the same date.

months in the State Jail Division of the Texas Department of Criminal Justice. *See* HEALTH & SAFETY § 481.115(b). He was likewise assessed a concurrent seven-year sentence for his aggravated-assault conviction following the revocation of his community supervision.

When the father submitted to a drug screen for the Department in mid-February 2024, he tested positive for marihuana and cocaine. The Department implemented a safety plan that required G.H.'s paternal grandmother monitor all contact between G.H. and the parents. The parents were also ordered to participate in family-based safety services[3] (FBSS). But in July 2024, during the FBSS case, the mother and G.H. tested positive for cocaine and marihuana. The Department sought and was granted temporary managing conservatorship of G.H. and placed him with the family who had adopted his older half-brother.

Family plans of service were created for the parents, which the trial court approved and made orders of the court. The parents completed their service plan requirements and attended their weekly supervised visits with G.H. However, both parents tested positive for marihuana several times while that case was pending. The father was authorized to use low-THC cannabis as part of the Compassionate-Use Program, but the mother did not have a prescription to use it. *See generally* HEALTH & SAFETY §§ 487.001–.256 (Texas Compassionate-Use Act); TEX. OCC. CODE ANN. §§ 169.001–.006 (West Supp. 2025) (Authority to Prescribe Low-THC Cannabis to Certain Patients for Compassionate Use); 37 TEX. ADMIN. CODE pt. 1 ch. 12 §§ 12.1–.61 (Tex. Dep't of Pub. Safety, Compassionate-Use/Low-THC

---

[3]"Family-based safety services are protective services provided to a family whose children are not in the conservatorship of the Department." 40 TEX. ADMIN. CODE pt. 19 ch. 700 subch. G div. 2 § 710 (2021). The Department's Child Protective Services Division provides family-based safety services to families and children "to: (1) protect the children from abuse and neglect; (2) help the family reduce the risk of future abuse or neglect; and (3) prevent the removal of the children from their home." *Id.* Specifically, the family was ordered to participate in services through the Texas Family First (TFF) pilot program. *See* FAM. §§ 262.402–.410 (authorizing and implementing the Family Preservation Services Pilot Program).

6

Cannabis Program). And, like most patients who are prescribed low-THC cannabis under the Compassionate-Use Act, the father was prohibited from smoking his limited dosage units of low-THC cannabis. *See* Occ. § 169.001(3), (4).

In March 2025, the mother gave birth to G.H.2. The mother and G.H.2 tested negative for all substances at that time, but the Department was notified that hospital personnel smelled the odor of marihuana emitting from the father. When the Department drug tested G.H.2 on July 1, 2025, he was positive for marihuana. G.H.2 was placed with his and G.H.'s paternal great aunt and her husband, V.N. and R.N., as "a voluntary placement" that the parents "could decide to end at any time." Permanency supervisor Brittany Elizondo discussed G.H.2's drug test results with the parents and the mother explained that "she potentially might have brought [G.H.2] around some friends that maybe she shouldn't have." The father revealed that he was illegally obtaining and using marihuana beyond his prescribed low-THC cannabis. He also appeared at a hearing in August 2025 smelling strongly of marihuana.

The trial court held the final termination hearing on July 14, October 1, and December 3, 2025. Three-year-old G.H. was living in a foster home in Wichita Falls, his third placement since removal. Permanency case manager Myisha Taylor testified that G.H. was "doing really good," had no developmental delays or behavioral concerns, and completed speech therapy and occupational therapy in May 2025. Although G.H.'s foster home was not an adoptive placement, V.N. and R.N. were approved as a placement for G.H. and were willing to adopt him. Taylor had no concerns about V.N.'s and R.N.'s ability to care for both G.H. and G.H.2.

Both Taylor and Elizondo agreed that G.H. had a bond with his parents, and that the parents had made progress since the beginning of the case. And while the father tested positive for marihuana again in September 2025, the mother was negative for all substances. However, according to Elizondo, termination was in the

7

best interest of G.H. because the parents had established a pattern of drug use and exposing their children to drugs.[4]

V.N. testified that she and R.N. had been caring for G.H.2 for approximately six months and were willing to care for G.H. as well. She and R.N. intended to adopt G.H. if the parents' rights were terminated and had a contingency plan if R.N.'s and her health deteriorated. Despite her concerns that the parents and their "rowdy bunch" of friends may expose G.H.2 to drugs or alcohol, she recently began allowing the parents to spend weekends with G.H.2. V.N. was previously unaware that the parents continued testing positive for marihuana and reiterated her commitment to protecting G.H. and providing a safe, loving home.

At the conclusion of the hearing, the trial court terminated each parent's parental rights and found termination to be in the best interest of the child. *See* FAM. § 161.001(b)(1)(D), (E), (b)(2). This appeal followed.

### III. *The Best Interest of the Child*

Each parent challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of that parent's parental rights is in the best interest of the child. "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72). We reiterate that the trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the factfinder so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving the requisite due deference to the trier of fact, we hold that, based on the evidence in

---

[4]Taylor acknowledged the existing concern that the parents would continue exposing G.H. to drugs if he returned to their care, but she would have preferred that if the trial court did grant access to them that it appoint the parents as possessory conservators so that they could demonstrate their ability to provide G.H. with a safe, drug-free home environment. Taylor further attested that only the mother, not the father, has shown an ability to maintain sobriety "at certain times."

the record and the application of the *Holley* factors, the trial court could have formed a firm belief or conviction that termination of each parent's parental rights was in the best interest of the child. *See Holley*, 544 S.W.2d at 371–72.

Evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). In other words, the absence of evidence regarding some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.) (quoting *In re A.E.*, No. 05-14-01340-CV, 2015 WL 1184179, at *6 (Tex. App.—Dallas Mar. 16, 2015, pet. denied) (mem. op.)). Consequently, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interest[] of the child[ren]." *J.S.*, 687 S.W.3d at 552 (quoting *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.)). And evidence that is relevant to Section 161.001(b)(1) termination grounds may be probative of the child's best interest. *See In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013) (citing *C.H.*, 89 S.W.3d at 28).

Neither parent contests the trial court's endangerment findings under Section 161.001(b)(1)(D) and (E). So long as the evidence supports those findings, they are valid grounds for termination. *See E.C.R.*, 402 S.W.3d at 249–50; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *J.S.*, 687 S.W.3d at 552. In this regard, evidence that each parent endangered G.H. could be considered by the factfinder in determining whether termination is in the child's best interest. *See In re H.S.*, No. 24-0307, 2026 WL 1614496, at *9 (Tex. June 5, 2026) (Although heightened appellate review applies to both subsections, evidence that supports a finding under

subsection (b)(1) "may also be, and indeed often is, relevant to best interest under [subsection] (b)(2).""); *cf. E.C.R.*, 402 S.W.3d at 249–50; *C.J.O.*, 325 S.W.3d at 266.

The parents' years of drug use "implicates most of the *Holley* factors." *In re E.D.*, 682 S.W.3d 595, 607 (Tex. App.—Houston [1st Dist.] 2023, pet. denied). It is well-established that a parent's continuing pattern of drug use can support a best interest finding because of the "attendant risks to employment, housing, and prolonged absence from the child[]." *In re R.R.A.*, 687 S.W.3d 269, 279–81 (Tex. 2024). Each parent's criminal history began nearly a decade before the Department initiated the underlying suit, and the mother's commission of drug-related crimes coincided with the removal of her two older children. *See id.* at 281 (A parent's pattern of drug use may pose a danger to the child's physical or emotional well-being.); *see also In re J.A.R.*, 696 S.W.3d 245, 257 (Tex. App.—Houston [14th Dist.] 2024, pet. denied) (The parents' years of drug use, extensive criminal history, and history with the Department supported the trial court's best interest finding.); *In re L.R.*, No. 11-22-00332-CV, 2023 WL 3633700, at *2–3 (Tex. App.—Eastland May 25, 2023, pet. denied) (mem. op.) (mother's significant criminal history and termination of her parental rights to another child supported best interest finding). Additionally, the father was on community supervision for a drug-related offense at the time of the final hearing. *See In re A.M.*, No. 11-25-00253-CV, 2026 WL 545550, at *7 (Tex. App.—Eastland Feb. 27, 2026, no pet.) (mem. op.) (Any criminal activity that exposes the parent to the potential for incarceration is relevant to the best interest analysis.).

Despite the years of adverse consequences, the parents' drug use persisted. The mother used marihuana while pregnant with G.H., which "supports a finding of direct injury to the child." *In re A.V.*, 697 S.W.3d 657, 659 (Tex. 2024) (relating to the trial court's endangerment findings). The parents likewise tested positive for marihuana and cocaine prior to G.H.'s removal, and exposed G.H. to drugs before

he was ultimately removed upon testing positive for marihuana and cocaine. Nor did G.H.'s removal serve as a deterrent—two weeks before the final hearing commenced, the parents' youngest child, G.H.2, tested positive for marihuana when he was three months old. *See In re R.R.L.*, No. 11-25-00263-CV, 2026 WL 616107, at *7 (Tex. App.—Eastland Mar. 5, 2026, no pet.) (mem. op.) (Courts may look to a parent's treatment of other children in the family in deciding whether that parent engaged in a course of conduct that endangered the child, which is likewise relevant to the best interest analysis. (citing *Cervantes-Peterson v. Tex. Dep't of Fam. & Protective Servs.*, 221 S.W.3d 244, 253 (Tex. App.—Houston [1st Dist.] 2006, no pet.))). The parents' decision to engage in illegal drug use during the pendency of a termination suit, when they were at risk of losing their child, is indeed contrary to the child's best interest. *See J.S.*, 687 S.W.3d at 551; *In re A.M.*, 495 S.W.3d 573, 580 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

We further emphasize the important distinction between the father's legal use of low-THC cannabis and illegally smoking marihuana in the presence of his children. His prescription permitted only the former; it was not a license to smoke illegally obtained marihuana. Even so, a parent's abuse of *any* substance—whether legal or not—may affect his or her ability to parent. *See In re M.C.*, No. 09-25-00232-CV, 2025 WL 3560685, at *13, *27 (Tex. App.—Beaumont Dec. 11, 2025, pet. filed) (mem. op.) (evidence that the mother, who had a "medical marijuana card," continued to abuse alcohol and drugs throughout the case supported the best interest finding). And, as with any potentially harmful substance, a parent must take certain precautions to protect their children from such exposure. Thus, it is not in a child's best interest to return to a parent who uses intoxicants or illegal substances in a manner that exposes the child to harm, or who knowingly surrounds the child with others who expose the child to harm. *See* FAM. § 153.002 (The best interest of the children shall always be the primary consideration.); *In re E.A.R.*, 583 S.W.3d

898, 909 (Tex. App.—El Paso 2019, pet. denied) ("Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child . . . associate[s] on a regular basis in [the] home is a part of the [child's] 'conditions or surroundings'" under Section 161.001(b)(1)(D).).

In the present case, the evidence permitted the rational inference that the father illegally smoked marihuana with the mother, in the mother's presence when she stopped using herself, in the presence of G.H., and then G.H.2. Considering the evidence of the parents' history and pattern of drug use, criminal conduct, and consistent disregard for the safety of G.H. and their other children, the trial court could have rationally concluded that the parents were unable to meet the current and future physical and emotional needs of G.H. *See Holley*, 544 S.W.2d at 371–72; *In re U.G.G.*, 573 S.W.3d 391, 402 (Tex. App.—El Paso 2019, no pet.) ("In reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children.").

Nevertheless, we do not discount the mother's improvements. Her marihuana levels decreased as the case progressed, and she eventually tested negative for all illegal substances. And Elizondo agreed that the mother's recent positive drug tests were likely due to exposure. But "evidence of improved conduct, especially of short duration, does not conclusively negate the probative value of a [parent's] long history of drug use and irresponsible choices." *J.O.A.*, 283 S.W.3d at 346; *see also N.T.*, 474 S.W.3d at 479 ("[R]ecent improvement alone is not sufficient to avoid termination of parental rights." (quoting *In re K.D.C.*, No. 02-12-00092-CV, 2013 WL 5781474, at *16 (Tex. App.—Fort Worth Oct. 24, 2013, no pet.) (mem. op.))). This is especially true here. When the mother was given opportunities in the past to participate in services and achieve sobriety, she did so only sporadically and "for a brief period of time" until the Department's involvement concluded. *See In re A.H.*, 679 S.W.3d 817, 830 (Tex. App.—El Paso 2023, pet. denied) (mother's voluntary

admission to an inpatient program after removal does not counteract her history of relapses and "pattern of decline upon receiving children back into her care").

Additionally, the mother's recent sobriety and the father's legal use of prescription drugs are immaterial if they knowingly engage in conduct that harms G.H. or their other children. For instance, the parents' service plans prohibited them from "knowingly associat[ing] with individuals under the influence of illegal substances." Notably, the mother blamed "some friends" for G.H.2's positive drug test, but the father implied that he was responsible for exposing G.H.2 to drugs through his own illegal marihuana use. The mother also tested positive after she stopped using, which the trial court could reasonably infer was attributable to the father. Such evidence further substantiated V.N.'s, the Department's, and the trial court's concerns of continued drug exposure if G.H. returned to the care of either parent. Consequently, the mother's continued cohabitation with the father and association with other drug users posed a substantial risk of harm to G.H.[5] *See E.A.R.*, 583 S.W.3d at 909. Further, and as the supreme court has recently said, all parents, including the mother here, have an ongoing duty to protect their children, irrespective of the circumstances. *H.S.*, 2026 WL 1614496, at *11–12.

In this case, the trial court need not have ignored the parents' cycle of drug use and exposing their children to drugs simply because they substantially complied with other service plan requirements—such compliance was insufficient to alleviate the Department's and trial court's concerns for G.H.'s safety under the circumstances. *See In re S.B.*, No. 11-24-00267-CV, 2025 WL 920044, at *7 (Tex. App.—Eastland Mar. 27, 2025, no pet.) (mem. op.) (The trial court could consider

---

[5]We recognize the Texas Supreme Court's recent admonishment to "proceed with particular caution" in terminating a parent's rights "based on a *spouse's* violence" or other bad acts. *H.S.*, 2026 WL 1614496, at *9 (citing *In re A.P.*, 672 S.W.3d 132, 132–33 (Tex. 2023) (Young, J., concurring)). It is evident that the Department and trial court did so here, and, as we have discussed in detail, the trial court terminated the mother's parental rights based on her independent, intentional acts and omissions.

13

in its best interest analysis "the father's continued drug abuse after the children's removal" and that the mother's husband had an extensive criminal history.).

Stability and permanence are paramount in raising children. *J.A.R.*, 696 S.W.3d at 257. At the time of the final hearing, G.H. was three. There was no evidence presented of his desires, but it was undisputed that he had a bond with his parents. *See In re E.J.M.*, 673 S.W.3d 310, 334 (Tex. App.—San Antonio 2023, no pet.) (When children are too young to express their desires, the factfinder may consider whether the children have bonded with their caregivers, are well-cared for by them, and whether the children have spent minimal time with a parent.); *see also N.J.H.*, 575 S.W.3d 822, 835 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (evidence showing that a young child had bonded with the foster family supported the trial court's best interest finding). Nevertheless, the parents failed to demonstrate their willingness or ability to provide G.H. with a safe, stable, drug-free home environment. By contrast, the Department's plan was to place G.H. with V.N. and R.N., who showed that they could provide G.H. with a stable, safe, and loving home.

It has long been recognized that repeatedly removing children from their parents' care and leaving them in a state of impermanence and uncertainty is detrimental to their physical and emotional well-being. *See Lehman v. Lycoming Cnty. Children's Servs. Agency*, 458 U.S. 502, 513–14 (1982) ("There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain . . . under the care of his parents or foster parents, especially when such uncertainty is prolonged."). "To ensure that children's lives are not kept in limbo while judicial processes crawl forward, the Legislature requires termination proceedings conclude at the trial level within a year and a half from the date of a child's removal from the parent." *In re B.L.D.*, 113 S.W.3d 340, 353 (Tex. 2003) (citing FAM. § 263.401). Under the circumstances of this case, G.H.'s need for

finality and permanency and for protection from the parents' cycle of drug use and exposure weigh in favor of terminating their parental rights.

Upon considering the emotional and physical danger to G.H. now and in the future, G.H.'s emotional and physical needs now and in the future, each parents past and present substance abuse, the parents' criminal history, the mother's history with the Department, and the parents' refusal to completely address the issues that caused the Department's involvement, we hold that the evidence is legally and factually sufficient to support the trial court's findings that termination of each parent's parental rights is in G.H.'s best interest. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72; *J.S.*, 687 S.W.3d at 554.

Accordingly, we overrule each parent's sole issue on appeal.

IV. *This Court's Ruling*

We affirm the order of the trial court.


W. STACY TROTTER

JUSTICE


July 10, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.